# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

MICHAEL FISHER, #262-076          *

Plaintiff                         *

v                                 *   Civil Action No. RDB-16-2157

ORLANDO JOHNSON,                  *
UNKNOWN PATUXENT INSTITUTION
   OFFICIALS,                     *
Individually and in their official capacities
                                              *

Defendants
                                     ***

## MEMORANDUM OPINION

Self-represented Plaintiff Michael Fisher, a Maryland Division of Correction ("DOC") prisoner currently confined at North Branch Correctional Institution ("NBCI"),[1] is suing Orlando Johnson, Chief of Security at Patuxent Institution, in his official and individual capacities. Fisher seeks compensatory and punitive damages and alleges that while housed at Patuxent,[2] Johnson subjected him to retaliation that adversely impacted his prison job and classification status and resulted in his transfer to NBCI.[3] ECF 1. Johnson, by counsel, has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF 28.[4] Consonant with the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Fisher was notified Johnson's Motion could

---

[1] NBCI is a maximum-security facility located in Cumberland, Maryland.

[2] Patuxent, located in Jessup, Maryland, is a treatment-oriented maximum-security facility.

[3] Fisher also names as Defendants "Unknown Patuxent Institution Officials" who are alleged to have caused a delay in mailing a pleading to the Circuit Court for Howard County in December of 2014 or January of 2015. Fisher also alleges these Defendants opened mail from Georgetown Law Center on or around October 30, 2015, outside Fisher's presence. Fisher is unable to identify the individuals responsible for this interference with his legal mail, and the allegations raised in the Complaint provide no factual basis to conclude that Fisher's mail problems were caused by Johnson's interference. Fisher's access-to-courts claims cannot proceed here, and the "Unknown" Defendants shall be dismissed without prejudice in connection with the instant action.

[4] The Motion contains an unsigned Declaration of Richard Roderick, Case Management Manager at NBCI. ECF 28-1. A signed Declaration was later provided. ECF 30-1.

be treated as a Motion for Summary Judgment and he was entitled to file an opposition with materials in support. ECF 29.[5]  Fisher has filed an opposition to the Motion for Summary Judgment, as supplemented.  ECF 34, 35.[6]

The case is ripe for disposition. After considering the pleadings, exhibits, and applicable law, the Court now rules pursuant to Local Rule 105.6 (D. Md. 2016), as a hearing is deemed unnecessary. For reasons to follow, Johnson's Motion for Summary Judgment will be GRANTED with regard to imposition of liability in an official capacity, but otherwise DENIED.

## BACKGROUND

Fisher provides the following information in support of his claims.  On April 4, 2014, while housed at Patuxent Institution, he received an infraction alleging he had diluted a urine specimen.  Although Fisher was found not guilty of the infraction in a formal disciplinary hearing convened on April 16, 2014, he nonetheless received disciplinary sanctions from Assistant Warden James Flood.[7]  ECF 1-1 at p. 1.  Fisher filed an Administrative Remedy Procedure ("ARP") complaint against Flood and Johnson to protest the imposition of sanctions after a "not guilty" finding regarding the infraction. ECF 1-1 at p. 12.

While the ARP complaint was pending, in late June of 2014, Fisher was offered a position at Patuxent's Maryland Correctional Enterprises ("MCE") industrial shop based on approval by classification personnel and Warden Patricia Gains-Johnson.  Fisher alleges that Johnson sent an email to MCE manager Charles Behnke disapproving the hiring decision, and the job offer was withdrawn. Between that time and June 25, 2015, Fisher attempted to obtain

---

[5] This opinion references the pagination assigned by the Court's electronic docket system.

[6] A Declaration attesting to Fisher's good conduct while incarcerated was submitted by his father, Steven D. Shick, ECF 33.  While not directly relevant to the outcome of the case, the Declaration has been docketed as correspondence.  Fisher also appends the Declaration as a Supplement to his opposition response.  ECF 35.

[7] Flood is not named as a party in this action.

2

other prison jobs at MCE, and also applied for positions in the ID Room and the school. Fisher claims that each supervisor was told by Johnson to withhold positions from Fisher. He claims that School Director Nadine Snowden was told by Johnson that hiring Fisher would lead to retaliation against her department. ECF 1 at p. 2.

Johnson was promoted to Director for Security Operations for Maryland's Department of Public Safety and Correctional Services ("DPSCS"), and was no longer stationed at Patuxent. On June 25, 2015, following Johnson's departure, Fisher was hired to work at MCE. A few months later, Johnson was demoted and returned to Patuxent as Chief of Security. Johnson's return had no immediate impact on Fisher's job.

On May 10, 2016, Fisher mailed a Maryland Tort Claim via certified mail against Johnson alleging retaliation resulting in his inability to secure a prison job as well as interference with legal mail. The paperwork was received by the State Treasurer's Office on May 17, 2016. ECF 1-1 at pp. 8-10. Two days later, on May 19, 2016, Fisher was placed on Administrative Segregation by Johnson pending an investigation as to whether Fisher was dangerous to the security of the institution, other prisoners, or staff. *Id.* at p. 11. As of the filing of his Complaint on June 9, 2016, Fisher remained on administrative segregation and had been transferred to NBCI. He was not charged with institutional rule violations. Fisher states that he has maintained a clean institutional record during his 20 years of incarceration, held a "premier job," within the DOC, and had participated in "multiple volunteer activities." ECF 1 at p. 4. Fisher contends that Johnson's retaliation is an attempt to deprive him of his First Amendment rights and undertaken to punish him for using the ARP process and filing various actions in the courts or State administrative agencies.

**A. Defendant's Response**

Johnson provides no discussion or documentation regarding the hearing officer's determination that Fisher was not guilty of diluting a urine sample. Johnson also provides no discussion or affidavit refuting Fisher's claim that he overrode the June 2014 decision made by classification personnel and/or the warden approving Fisher for the MCE job, and he makes no effort to assure this Court that such action was warranted. Similarly, no investigatory findings accompany Johnson's notice of assignment to administrative segregation (ECF 28-2 at p. 3), no explanation is provided as to why Fisher was not charged with an infraction for "trying to initiate a riot, and no rationale is provided to explain why Fisher was transferred from a maximum-security therapeutic setting to the highly restrictive NBCI.

**B. Plaintiff's Opposition**

In his opposition response, Fisher denotes the restrictions placed on NBCI prisoners who are on administrative segregation. Fisher also states that Johnson's suspicion that he wanted to start a riot in Patuxent's dining room has been converted into fact, without any adjustment adjudication. ECF 34-1 at pp. 6-7.

**STANDARD OF REVIEW**

When a defendant seeks dismissal or, in the alternative, summary judgment, the Court may use its discretion, under Rule 12(d), to determine whether to consider matters outside the pleadings. *See Kensington Volunteer Fire Dep't., Inc. v. Montgomery Cty.*, 788 F.Supp.2d 431, 436–37 (D. Md. 2011), *aff'd sub nom., Kensington Volunteer Fire Dep't., Inc. v. Montgomery Cty.,* 684 F.3d 462 (4th Cir. 2012). Pursuant to Rule 12(d), "[w]hen matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Laughlin v.*

*Metro. Wash. Airports Auth.,* 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed. R. Civ. P. 12(d)).

The United States Court of Appeals for the Fourth Circuit has outlined two requirements for when a motion to dismiss may be converted to a motion for summary judgment: (1) the "parties [must] be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and (2) "the parties 'first [must] be afforded a reasonable opportunity for discovery.'" *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). When the motion is expressly captioned as a motion to dismiss or in the alternative a motion for summary judgment and matters outside of the pleadings are submitted, the parties are deemed to have sufficient notice that conversion may be granted. *See Moret v. Harvey*, 381 F.Supp.2d 458, 464 (D. Md. 2005). "[T]he party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir. 1996). Here, Fisher has not filed an affidavit or otherwise requested discovery, other than the materials that have been made available to him.

In light of the foregoing, the Court is satisfied that it is appropriate to address Johnson's dispositive Motion as one for summary judgment, because matters outside of the pleadings will be considered.

Under Fed. R. Civ. P. 56(a), the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party

is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158-59 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *accord Hooven-Lewis*, 249 F.3d at 265.

## ANALYSIS

Johnson seeks summary judgment in his favor based on the affirmative defenses of sovereign immunity and qualified immunity, and also argues that Fisher has failed to establish a retaliation claim.

### A. Affirmative Defenses

#### 1. Sovereign Immunity

When an individual is sued in his official capacity, the suit is essentially against the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (noting that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). Under Eleventh Amendment jurisprudence, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71

(1989). Therefore, official capacity claims are subject to sovereign immunity under the Eleventh Amendment. *Graham*, 473 U.S. at 167; *accord Hafer v. Melo*, 502 U.S. 21, 25 (1991).

As the Supreme Court explained in *Graham*, 473 U.S. at 165: "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)) (citations omitted); *see also*, *e.g.*, *Huggins v. Prince George's Cnty.*, 683 F.3d 525, 532 (4th Cir. 2012) (treating suit against individuals in official capacity as suit against county). Therefore, states and their officers, sued in their official capacities, are not "persons" subject to suit for money damages under 42 U.S.C. § 1983. *Will*, 491 U.S. at 71.

Absent waiver, sovereign immunity shields a governmental entity from suit. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. State Gov't Code Ann., ' 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. To the extent that Fisher seeks damages from Johnson in his official capacity, Johnson is immune from such damages. *See Fed. Mar. Comm'n v. S. C. State Ports Auth.,* 535 U.S. 743, 760 (2002); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Johnson is entitled to summary judgment in his favor in regard to all claims against him in his official capacity.[8]

### 2. Qualified Immunity

Defendant also asserts entitlement to qualified immunity, arguing that his conduct did not violate any clearly established constitutional right of which a reasonable public official should have known. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *see also Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Qualified

---

[8] The record does not reflect whether Fisher filed a state tort claim, and if so, the outcome of that proceeding.

immunity is an "'immunity from suit rather than a mere defense to liability' . . . ." *Ussery v. Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis in *Mitchell*), and shields government officials who commit constitutional violations but who, "in light of clearly established law, could reasonably believe that their actions were lawful." *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 401 (4th Cir. 2015) (internal quotations omitted); *see also Scinto v. Stansberry*, ___ F.3d ___, 2016 WL 6543368, at *10 (4th Cir. Nov. 4, 2016). Thus, "a government official who is sued in his individual capacity may invoke qualified immunity." *Bland*, 730 F.3d at 391; *see Harlow*, 457 U.S. at 818.[9]

Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law," *Harlow*, 457 U.S. at 818, and so an officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. It protects officials "'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Purnell*, 652 F.3d at 531 (4th Cir.)); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). In other words, qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, ––– U.S. –––, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). However, "[b]ecause an official 'who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity,' the defendant bears the initial burden 'of demonstrating that the conduct of

---

[9] The defense of qualified immunity does not apply to claims for injunctive or declaratory relief. *See Pearson v. Callahan*, 555 U.S. at 242-43 (affirming that defendants may not seek qualified immunity "in cases in which that defense is not available, such as … § 1983 cases against individuals where injunctive relief is sought instead of or in addition to damages"); *Lefemine v. Wideman*, 672 F.3d 292, 303-04 (4th Cir.) ("Claims for declaratory and injunctive relief are not affected by qualified immunity."), *rev'd on other grounds*, — U.S. —, 133 S. Ct. 9 (2012); *accord Vollette v. Watson*, 937 F. Supp. 2d 706, 720 (E.D. Va. 2013). Fisher seeks injunctive relief to bar future retaliation or transfer without cause and a declaration that Johnson's actions against him violated his constitutional rights. ECF 1 at p. 5.

8

which the plaintiff complains falls within the scope of the defendant's duties.'" *Henry v. Purnell*, 501 F.3d 374, 377 n.2 (4th Cir. 2007) (en banc); *see also, e.g., Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004).

In *Scinto, supra*, at *10, the Court explained: "In determining whether defendant government officials are protected by qualified immunity, the court considers both 'whether a constitutional right [was] violated on the facts alleged' and 'whether the right was clearly established' at the time of the conduct in question." (Citations omitted.) Thus, the qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right," *Saucier, supra*, 533 U.S. at 201; and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant, supra*, 677 F.3d at 662 (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)); *see Owens, supra*, 767 F.3d at 395-96. The "two inquiries . . . may be assessed in either sequence." *Merchant*, 677 F.3d at 661-62; *accord Pearson*, 555 U.S. at 236 (judges may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first).

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, ––– U.S. –––, 132 S. Ct. 1235, 1245 (2012) (citing *Creighton*, 483 U.S. at 639). If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity, because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law

9

forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818. On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id*. at 818-19.

To determine whether the right was clearly established, the court first must define the right at issue. *Scinto, supra*, at *10; *Occupy Columbia*, 738 F.3d at 118. "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, ⎯⎯ U.S. ⎯⎯, 135 S. Ct. 348, 350 (2014) (quoting *Creighton*, 483 U.S. at 640). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll*, 135 S. Ct. at 350 (quoting *al-Kidd, supra*, 563 U.S. at 741).

In determining whether a right was clearly established, courts in this Circuit "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit], and the highest court of the state in which the case arose,'" as of the date of the conduct at issue. *Doe ex rel. Johnson v. S.C. Dept. of Soc. Servs*., 597 F.3d 163, 176 (4th Cir. 2010) (citations omitted). While a right may be clearly established by any number of sources, there need not be a case "directly on point . . . ." *al-Kidd*, 563 U.S. at 741.

To defeat qualified immunity, "'the existing authority must be such that the unlawfulness of the conduct is manifest.'" *Merchant*, 677 F.3d at 665 (quoting *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998)); *see Bland, supra*, 730 F.3d at 391 (stating that "[f]or a plaintiff to defeat a claim of qualified immunity, the contours of the constitutional right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right") (internal quotations omitted).

Absent documentation supporting the adverse actions taken against Fisher and an affidavit attesting to the rationale behind those actions, the Court is unable to undertake the two inquiries necessary in determining whether Johnson is entitled to qualified immunity. Therefore, examination of the retaliation claim is required.

B.      **Retaliation Claim**

In order to prevail on a claim of retaliation, Fisher Amust allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right.@ *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) (Acomplaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death@ sufficient to state claim). However, a complaint which alleges retaliation "in wholly conclusory terms may safely be dismissed on the pleading alone.=@ *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACL U of Maryland, Inc. v. Wicomico County*, Md. 999 F.2d 780, 785 (4th Cir. 1993).

In the prison context, retaliation claims are treated with skepticism because disciplinary action taken by prison officials is by definition "retaliatory" if undertaken in direct response to prisoner misconduct. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Here, however, the " prisoner misconduct" is not apparent, both in the context of Fisher's adjustment outcome regarding urinalysis and with regard to his transfer and long-term placement on administrative segregation. Defendant provides no explanation regarding the decisions adversely affecting Fisher; therefore, this Court cannot conclude on the record before it that those actions were not retaliatory.

## CONCLUSION

In sum, Johnson has failed to provide evidence sufficient to support his claim to qualified immunity or to refute Fisher's claims of retaliation with regard to his removal from a prison job, placement on administrative segregation, or the classification decision to transfer Fisher from Patuxent Institution to NBCI. Johnson shall be granted an opportunity to supplement his dispositive motion, and Fisher shall be provided an opportunity to further respond to that supplementation. A separate Order follows.

_April 28, 2017___                                             ___/s/_____
Date                                                                     RICHARD D. BENNETT
                                                                              UNITED STATES DISTRICT JUDGE