IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL FISHER, #262-076            *

Plaintiff                           *

v                                   *    Civil Action No. RDB-16-2157

ORLANDO JOHNSON,                    *

Defendant                           *
                                  ***

## MEMORANDUM OPINION

Self-represented Plaintiff Michael Fisher, a Maryland Division of Correction ("DOC") prisoner currently confined at North Branch Correctional Institution ("NBCI"),[1] seeks compensatory and punitive damages against Orlando Johnson, Chief of Security at Patuxent Institution, in his official and individual capacities. Fisher alleges that while housed at Patuxent,[2] Johnson subjected him to retaliation that adversely impacted his prison job and classification status and resulted in his transfer to North Branch Correctional Institution (NBCI). ECF 1. Johnson's Motion for Summary Judgment, based in part on the affirmative defenses of sovereign and qualified immunity, was granted with regard to imposition of liability in an official capacity, but was otherwise denied, because Johnson failed to provide evidence sufficient to refute Fisher's claims of retaliation with regard to his removal from a prison job, placement on administrative segregation, or the classification decision to transfer Fisher from Patuxent to NBCI. ECF 28; *see also* Memorandum Opinion and Order dated April 28, 2017, ECF 37 and 38.

Johnson has provided further response, which shall be construed as a supplemental

---

[1] NBCI is a maximum-security facility located in Cumberland, Maryland.

[2] Patuxent, located in Jessup, Maryland, is a treatment-oriented maximum-security facility.

Motion for Summary Judgment (ECF 40), which Fisher has opposed.[3] ECF 45). The Motion is ripe for disposition. After considering the pleadings, exhibits, and applicable law, the Court now rules pursuant to Local Rule 105.6 (D. Md. 2016), as a hearing on the Motion is deemed unnecessary. For reasons to follow, Johnson's Response, treated as a Supplemental Motion for Summary Judgment (ECF 40) is DENIED without prejudice, subject to renewal as herein stated.

## BACKGROUND

The parties do not dispute that while housed at Patuxent, Fisher received an infraction alleging he had diluted a urine specimen. On April 16, 2014, Fisher was offered an informal resolution in connection with the infraction after the hearing officer found him not guilty of intentionally "water loading" to dilute his urinalysis test.[4] ECF 40-1, p. 7. Despite the "not guilty" finding, Fisher nonetheless received a disciplinary sanction from Assistant Warden James Flood, who determined that Fisher should be removed from his job assignment in the ID room.[5] ECF 1-1 at p. 1. Fisher filed an Administrative Remedy Procedure ("ARP") complaint against Flood and Johnson to protest imposition of the sanction. ECF 1-1 at p. 12. Fisher claims that as a result of the ARP, Johnson told Patuxent personnel that they should not hire him for various prison positions, including choice assignments such as Maryland Correctional Enterprises (MCE).

According to Fisher, Johnson was promoted to Director for Security Operations for Maryland's Department of Public Safety and Correctional Services ("DPSCS"), and was no

---

[3] The opposition was filed after Fisher moved for additional time to respond. The Motion for Extension of Time (ECF 44) is granted nunc pro tunc.

[4] The hearing officer also found that prison officials failed to include in their report the "cut off" creatinine level necessary to establish water loading.

[5] Flood is not named as a party in this action. Johnson declares that while working in the ID room, Fisher was under investigation by the prison Intel department for drug trafficking. ECF 40-2, ¶ 3.

longer stationed at Patuxent. ECF 34-1 at pp. 5-6. Fisher states that on June 25, 2015, following Johnson's departure, Fisher was hired to work at MCE. A few months later, Johnson returned to Patuxent as Chief of Security. Johnson's return had no immediate impact on Fisher's job.

On May 10, 2016, Fisher mailed a Maryland Tort Claim via certified mail against Johnson alleging retaliation resulting in his inability to secure a prison job as well as interference with legal mail. The paperwork was received by the State Treasurer's Office on May 17, 2016. ECF 1-1 at pp. 8-10. Two days later, on May 19, 2016, Fisher was placed on Administrative Segregation by Johnson pending an investigation as to whether Fisher was dangerous to the security of the institution, other prisoners, or staff. *Id.* at p. 11. On May 24, 2016, a Case Management team recommended Fisher be removed from his job at MCE and held in administrative segregation pending transfer, after prison staff received an anonymous letter alleging that Fisher was inciting a fellow prisoner to riot or protest by staging a "sit-in" in the prison dining room. ECF 40-2, ¶8.

Fisher was then transferred to NBCI. He has not been charged with institutional rule violations with regard to information uncovered during the investigation, and contends that his transfer was Johnson's way to retaliate against him for exercising his First Amendment right to use the ARP process and file various actions in the courts or State administrative agencies. His Declaration states that he has never been involved in drug trafficking or other criminal activity while incarcerated, and had earned increasing levels of trust and freedom, evidenced by his clearance to work in Patuxent's women's facility and the ID room. ECF 45-1, ¶¶ 4-6; ECF 45-2.

On first review, it appears that Fisher's claim that Johnson impeded his ability to hold a prison job is belied by the fact that Fisher held a variety of jobs at Patuxent following the urinalysis incident, and was working at MCE on May 24, 2016, the date on which a Case

3

Management team recommended he be removed from MCE and placed on administrative segregation pending transfer. ECF 41-4, p. 1. What remains unclear is why Fisher remained at Patuxent after the 2014 determination that he may be involved in drug trafficking; why he was given increasingly responsible prison jobs after that determination; and why he in 2016 he was placed in administrative segregation and transferred from a maximum-security therapeutic setting at Patuxent to the highly restrictive NBCI, based on an anonymous "tip."[6] Although Johnson avers that he is responsible for approving inmate work assignments, and relies on information provided by the Intel Department in making those – and other – decisions (ECF 41-3, Johnson aff.), he provides none of the "Intel" on which he and the Case Management team acted. Johnson also fails to explain why Fisher was not charged with an infraction for trying to initiate a riot or sit-in prior to his transfer.

## CONCLUSION

Evidence providing a basis for keeping Fisher at Patuxent and employed in 2014, then placing Fisher on administrative segregation and transferring him from Patuxent in 2016 has not been provided to this Court. Johnson shall be granted one final opportunity to supplement his dispositive motion, by providing copies of relevant "Intel" relied upon by Johnson and/or provided to the Case Management team at the time these decisions were made.[7] Fisher shall be provided an opportunity to further respond to that supplementation. A separate Order follows.

_October 31, 2-17_
Date

_Rll D. Bntt_
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[6] Although initially transferred to NBCI (*see* ECF 7), Fisher since has been transferred to Maryland Correctional Training Center (MCTC) (*see* ECF 46), Maryland Correctional Institution-Hagerstown (MCIH) (ECF 48), and Roxbury Correctional Institution (RCI) (ECF 49).

[7] Said documents shall be filed as "restricted" documents. Fisher shall be provided a redacted version of those documents, and the redactions also shall be provided to the Court as restricted redacted documents.

4