UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

MICHAEL FISHER, #262-076           *

Plaintiff                          *

v                                  *    Civil Action No. RDB-16-2157

ORLANDO JOHNSON,                   *

Defendant                          *
                                  ***

# MEMORANDUM OPINION

## Procedural History

Self-represented Plaintiff Michael Fisher, a Maryland Division of Correction ("DOC") prisoner currently confined at Roxbury Correctional Institution ("RCI"),[1] seeks compensatory and punitive damages against Orlando Johnson, Chief of Security at Patuxent Institution, in his official and individual capacities. Fisher alleges that while housed at Patuxent, a treatment-oriented maximum security facility, Johnson on two occasions subjected him to retaliation that adversely impacted his prison job and classification status and resulted in his transfer to North Branch Correctional Institution ("NBCI"), a maximum security prison. ECF 1.

Johnson's first Motion for Summary Judgment, based in part on the affirmative defenses of sovereign and qualified immunity,[2] was granted with regard to imposition of liability in an official capacity. The Motion was otherwise denied because Johnson failed to provide evidence sufficient to refute Fisher's claims of retaliation with regard to his removal from a prison job,

---

[1] RCI is a medium-security facility located in Hagerstown, Maryland.

[2] The defense of qualified immunity is inapplicable here, as this Circuit recognizes that falsely charging a prisoner with disciplinary sanctions in retaliation for engaging in constitutionally protected conduct may be cognizable under § 1983. *See Booker v. South Carolina Dept. of Corr.,* 583 Fed. Appx, 43, 44-45 (4th Cir. 2014); *Booker v. South Carolina Dept. of Corr.,* 855 F.3d 533, 546 (4th Cir. 2017).

placement on administrative segregation, or transfer from Patuxent to NBCI. ECF 28; *see also* Memorandum Opinion and Order dated April 28, 2017, ECF 37 and 38.

Johnson provided further response, construed as a supplemental Motion for Summary Judgment (ECF 40), which Fisher opposed. ECF 45. The Motion was denied without prejudice subject to renewal upon presentation of evidence explaining why Fisher was kept at Patuxent and employed in 2014, then placed on administrative segregation in 2016 and transferred from Patuxent. ECF Nos. 50 and 51.

Johnson was granted one final opportunity to supplement his dispositive motion by providing copies of relevant "Intel" relied upon by Johnson and/or provided to the Case Management team at the time these decisions were made. His Response (ECF No. 60) falls short.[3] For reasons set forth herein, the Court grants Johnson summary judgment with regard to the April, 2014 incident that resulted in Fisher's temporary job loss; denies Johnson summary judgment with regard to the 2016 incident culminating in Fisher's transfer to NBCI; and grants Fisher's request for appointment of counsel.

**BACKGROUND**

For the purpose of clarity, certain discussion outlined in previous Memoranda is reiterated here.

A.  **2014 Incident**

It is undisputed that while housed at Patuxent, Fisher received an infraction alleging he had diluted a urine specimen.[4] ECF No. 41-1, Decl. of George Gregory, and attached records at

---

[3] Fisher has filed a Reply, with exhibit, to Johnson's Response. ECF No. 58.

[4] Fisher's sample was 14 mg/dl, which constitutes a finding of dilution. *See* Division of Correction ("DOC") Directive OPS 110.0015, ECF No. 41-1, p. 11, ¶ K(3). Fisher does not

pp. 11-12. On April 16, 2014, the hearing officer found him not guilty, noting that the lab report established a urine creatinine level of 14, "but neglected to state what a normal level in the urine would be." Sgt. Gaskins, who worked in the same area as Fisher, testified that the printing press makes the area hot, and those working there drink a lot of water. Gaskins further testified that when Fisher was called for random urinalysis testing he had no notice, left directly for the test, and had no time to intentionally "water load." ECF 60-1, p. 7.

Despite the "not guilty" finding, Fisher was offered an informal resolution in connection with the infraction by the hearing officer. Assistant Warden James Flood approved the decision, but nonetheless imposed a disciplinary sanction, removing Fisher from his job assignment in the ID room.[5] ECF 1-1 at p. 1. Fisher filed an Administrative Remedy Procedure ("ARP") complaint against Flood[6] and Johnson to protest imposition of the sanction. ECF 1-1 at p. 12. Fisher claims that as a result of the ARP, Johnson told Patuxent personnel that they should not hire him for various prison positions, including choice assignments such as Maryland Correctional Enterprises (MCE).

When reviewing a hearing officer's decision, a warden or his/her designee may without explanation impose additional informal or alternative sanctions regardless of the sanctions imposed by a hearing officer, and may affirm a decision but vacate or modify an informal disposition. *See* Md. Code Reg. 12.02.27.31 (West, April 28, 2017). Nothing suggests that

---

argue that DOC officials had a right to require the test, nor does he dispute the test results or that he was charged with a rule violation as a result of the test findings.

[5] Johnson declares that while working in the ID room, Fisher was under investigation by the prison Intel department for drug trafficking. ECF 40-2, ¶ 3. Despite requests from this Court to produce record evidence under seal concerning this investigation to support that assertion (April 28, 2017 Mem. Op., ECF 37, p. 12; October 31, 2017 Mem. Op., ECF 50, p. 4), Johnson provides nothing to substantiate his declaration statement.

[6] Assistant Warden Flood is not a party to this action.

Johnson played any role in Assistant Warden Flood's decision to remove Fisher from his job assignment following the April 2014 adjustment decision. Thus, Fisher's removal from that position does not, in and of itself, suggest improper or retaliatory conduct by Johnson.

According to Fisher, following the April 2014 adjustment proceeding, Johnson was promoted to Director for Security Operations for Maryland's Department of Public Safety and Correctional Services ("DPSCS"), and was no longer stationed at Patuxent. ECF 34-1 at pp. 5-6. Fisher states that on June 25, 2015, following Johnson's departure, Fisher was hired to work at Maryland Correctional Enterprises ("MCE"). A few months later, Johnson returned to Patuxent as Chief of Security. Johnson's return had no immediate impact on Fisher's job.

On May 10, 2016, Fisher mailed a Maryland Tort Claim via certified mail against Johnson alleging retaliation resulting in his inability to secure a prison job as well as interference with legal mail. The paperwork was received by the State Treasurer's Office on May 17, 2016. ECF 1-1, pp. 8-10. Two days later, on May 19, 2016, Fisher was placed on Administrative Segregation by Johnson pending an investigation as to whether Fisher was dangerous to the security of the institution, other prisoners, or staff. *Id.* at p. 11. On May 24, 2016, a Case Management team recommended Fisher be removed from his job at MCE and held in administrative segregation pending transfer, after prison staff received an anonymous letter alleging that Fisher was inciting a fellow prisoner to riot or protest by staging a "sit-in" in the prison dining room. ECF 40-2, ¶8.

Fisher was then transferred from Patuxent, a treatment-based facility, to NBCI, a maximum security prison. He has not been charged with institutional rule violations with regard to information uncovered during the investigation with regard to the riot or protest, and contends that his transfer was Johnson's way to retaliate against him for exercising his First Amendment

4

right to use the ARP process and file various actions in the courts or State administrative agencies. His Declaration states that he has never been involved in drug trafficking or other criminal activity while incarcerated, and had earned increasing levels of trust and freedom, evidenced by his clearance to work in Patuxent's women's facility and the ID room. ECF 45-1, ¶¶ 4-6; ECF 45-2.

As previously noted, it appears that Fisher's claim that Johnson impeded his ability to hold a prison job is belied by the fact that Fisher held a variety of jobs at Patuxent following the urinalysis incident, and was working at MCE on May 24, 2016, the date on which a Case Management team recommended he be removed from MCE and placed on administrative segregation pending transfer. ECF 41-4, p. 1. What remains unclear is why Fisher remained at Patuxent after the 2014 determination that he may be involved in drug trafficking; why, after an initial period without a prison job following the 2014 urinalysis incident after which he lost his job, he was given increasingly responsible jobs despite being labeled a drug trafficker; and why in 2016 he was placed in administrative segregation and transferred from a maximum-security therapeutic setting at Patuxent to the highly restrictive NBCI, based on an anonymous "tip."[7] Although Johnson avers that he is responsible for approving inmate work assignments, and relies on information provided by the Intel Department in making those – and other – decisions (ECF 41-2, Johnson aff.), he provides no documentation or reports from the prison intelligence unit providing the information of misconduct on which he and the Case Management team acted.

---

[7] Although initially transferred to maximum security NBCI (*see* ECF 7), Fisher since has been transferred to Maryland Correctional Training Center (MCTC), which houses minimum, medium and pre-release prisoners (*see* ECF 46), and to two medium security prisons, Maryland Correctional Institution-Hagerstown (MCIH) (ECF 48) and Roxbury Correctional Institution (RCI) (ECF 49).

5

Johnson also fails to explain why Fisher was not charged with an infraction for trying to initiate a riot or sit-in prior to his transfer.

## CONCLUSION

Johnson provides no record evidence to support his statements that Fisher was under investigation for drug trafficking and attempted to incite a riot or protest, and his motion for summary judgment, as supplemented, is denied. Fisher's motion for appointment of counsel (ECF No. 61) shall be granted. A separate Order follows.

Date: August 29, 2018 \_\_\_\_\_/s/_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE